PEDER HANSEN v. GEORGE W. LARSON AND ANOTHER.[1]

December 2, 1932.

No. 29,070.

E. H. Nicholas, for appellants.
F. B. Faber, for respondent.

WILSON, C. J.

Defendants appealed from a judgment of $1,063.15, awarded as damages arising out of an automobile collision.

John Larson, hereinafter referred to as defendant, drove a car owned by his father, defendant George W. Larson, upon a highway running north and south. Plaintiff drove his car east on a road intersecting with the other highway from the west, but not crossing

[1]Reported in 245 N. W. 835.

it. The southwest corner of this intersection had evergreen and apple trees partially obstructing the view of drivers approaching it from the south or from the west. We discuss the facts from the standpoint of the plaintiff, since the jury has accepted his version instead of the contradictory version of defendant.

Plaintiff approached the intersection traveling about 15 miles per hour. When he reached the intersection he looked both ways and then saw defendant about 500 feet away coming from the south. Plaintiff's intention was to enter a 16-foot gateway on the easterly side of the north and south road and about 54 feet north of the extended center line of the road coming from the west. The north and south road had a graveled roadbed about 42 feet wide, the whole road being 66 feet wide. Plaintiff drove into the intersection and turned to the left, traveling northerly along the east side of the highway, and turned easterly to enter the wide gateway. In leaving the highway he was traveling northeasterly or at least north of east. About the time the rear of his car was off the 42-foot graveled portion of the road a collision occurred between the two cars. The defendant, apparently recognizing that a collision was imminent, turned his car also to the east toward the gateway entrance and the cars "side-swiped." Immediately following the collision plaintiff's car advanced 10 or 12 feet, striking a small building weighing about three tons and known as the ticket office on the Jackson county fair grounds with such force as to move the building about six inches on the foundation. Plaintiff's car was badly smashed. The wind-shield was knocked out, the headlight was gone, the radiator ruined, the fenders and running board on the right side were gone, and the top destroyed. One wheel was smashed. Defendant's car, following the collision, passed through the gateway and stopped some 10 or 12 feet beyond, it being damaged on its left-hand side. Its left fenders and running board were destroyed. A post north of the gateway was knocked over by one of the cars. Defendant admitted soon after the collision that he was driving 30 miles an hour at the time of the accident.

When plaintiff saw defendant coming from the south, as above stated, he did not stop and wait for defendant to pass because he

thought he had plenty of time to cross to the east side of the road and turn north before defendant reached the intersection, and he was of the opinion that defendant would slack up in approaching the intersection. With such impressions he proceeded, and he did not thereafter pay any further attention to defendant's car and gave no signal of any kind to indicate that he was going to turn to the east into the gateway. After plaintiff had crossed to the east side of the north and south road and traveled north thereon, there was a wide, open, graveled road to the left on which defendant had ample opportunity to pass plaintiff's car if he so desired. When plaintiff was asked how fast he was going when he came into the intersection, he answered: "Ten to fifteen, [miles per hour] I can't say exactly. I don't like to go around corners, because I am afraid to run a car in the first place." Plaintiff was familiar with the road. He traveled around the intersection and up the right-hand side of the road and attempted to turn into the gateway as indicated.

On cross-examination plaintiff estimated defendant's speed when he saw him 500 feet south of the intersection at perhaps 60 miles per hour. Defendant testified on the trial that he was then travel-ing about 30 miles per hour. After the accident defendant told plaintiff that he would pay all the expenses resulting from the col-lision. Plaintiff is 72 years old, defendant is 24. Defendant claims that he saw plaintiff's car approaching the intersection from a point 100 to 150 feet west; that he kept his eye on plaintiff's car all the time. He testified that when he first saw plaintiff's car he himself was traveling between 30 to 35 miles an hour and when he approached the intersection he slowed down to about 15 miles per hour; that his car was about 15 or 20 feet south of plaintiff's car just before the collision; that he continued to watch plaintiff's car as it was going north; and that he had slowed down so that he was then traveling about 10 or 12 miles an hour. Defendant puts plain-tiff's car farther west on the road and claims that as plaintiff turned east he himself turned sharply to the right in an effort to avoid a collision. He says that just before plaintiff turned east

there was a distance of 8 or 10 feet between the cars; that he was back about that distance. He states that he applied his brakes. He says that the two cars entered the intersection about the same time.

When plaintiff was asked why he did not give a sign to indicate that he was going to turn into the gateway, he answered thus: "Because I saw him back there at least, when he was coming, 400 and some, pretty near 500 feet—and I had plenty of time to go down on my side and come in."

■ There is evidence which would justify the jury in finding that defendant approached, entered, and crossed the intersection traveling at a speed not reasonable and proper under the circumstances; that he did not shortly before the collision have his car under control, especially upon his own version of constantly observing all of plaintiff's movements; that he operated his car carelessly or heedlessly in disregard of the rights and safety of plaintiff; that plaintiff was not to his extreme right-hand side of the road, and defendant was wrongfully attempting to pass on plaintiff's right-hand side; and that just before the accident he was following plaintiff's car more closely than was reasonable and prudent under the circumstances. It is difficult to account for this collision in any way that does not include negligence on the part of defendant. The condition and location of the cars immediately after the accident tended to impeach defendant's version on the trial as to his speed just before and at the time of the collision, and the jury could well have found that these things corroborated the testimony that defendant had said he was driving 30 miles per hour at the time of the collision. There is also testimony in the case that shortly after the accident a witness talked to defendant at the scene of the collision and that defendant showed him the tracks his car made, and there was no appearance on the ground to indicate that the brakes had been applied. This witness also testified that defendant said he did not have time to stop, and he thought he could miss plaintiff on the right-hand side. This would seem to have been upon the theory that he expected to pass plaintiff upon the wrong side. The question of defendant's negligence was for the jury.

■ We think the question of plaintiff's contributory negligence under the circumstances was for the jury. He was an aged man of mature judgment. He saw defendant about 500 feet away. He had a right to assume, as he substantially testified, that defendant would lessen his speed and approach the intersection, with its obstructed view on the southwest corner, in a reasonable and prudent manner. He had a right to assume that defendant would come into the intersection at a reasonable speed under the circumstances and in recognition of plaintiff's superior rights incidental to his having first entered the intersection. Plaintiff saw defendant's car, and it may be that he misjudged its location or speed under such circumstances as to make reasonable an inference that it was due care for him to proceed as he did. See Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350. See also Primock v. Goldenberg, 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484; O'Connor v. Sinykin, 162 Minn. 382, 202 N. W. 891. Clearly plaintiff had the right of way in the intersection. He had no reason to suppose that defendant would not exercise due care under the circumstances. He thought he had time to cross to the east side of the road ahead of defendant. In this he was right. He completed that movement in safety. He then traveled north about 40 to 45 feet. The sharp conflict in the testimony is as to where on the road plaintiff was so traveling north in this short distance. If he traveled on the left of the center of the traveled portion and then turned to the right toward the gateway in front of defendant without warning, all as defendant claims, it would be easy to say that plaintiff was guilty of contributory negligence. If he traveled north near the center of the road and defendant undertook to pass him on the right side instead of the left, as the law provides, the jury in its judgment may have put the full blame on defendant. (The supplement to this claim as heretofore indicated is that it may be inferred that defendant was attempting to pass plaintiff on the wrong side.) But if plaintiff traveled in his proper place on the right-hand side of the traveled portion of the road as he claims he did, the jury would have diffi-

culty in finding him guilty of contributory negligence. It is clear, however, that he did not give any signal of his intention to turn to the right toward the gateway. Uniform highway traffic act, 1 Mason, 1927, § 2720-17, provides in part:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, * * * and whenever the operation of any other vehicle may be affected by such movement shall give a signal either by extending the arm horizontally from and beyond the left side of the vehicle or by an adequate mechanical or electrical signal device, plainly visible to the driver of such other vehicle, of the intention to make such movement at least fifty feet before a stop or turn is to be made."

Concededly plaintiff did not give any such signal. He says he did not because he thought he had plenty of time to go down on his side of the road and go into the gateway. Whether he was justified in so believing was a question for the jury. Such belief would not excuse a violation of the statute. But under the circumstances it was for the jury to say whether his failure to give a signal of his intended turn from the highway would affect the operation of defendant's car. If not, no signal was required. It should also be noted that if a signal was to be given, the statute requires it to be given at least 50 feet before the turn is to be made. No mention was made in the trial of the fact that plaintiff started to turn before he traveled 50 feet northerly, since the distance is 54 feet from the center of the gateway to the extended center line of the intersecting highway. But assume, if we may, that plaintiff was guilty of negligence as a matter of law in not complying with the statute, the question would remain for a jury to decide whether such negligence proximately contributed in any degree to the collision. That certainly does not appear as a matter of law. Unless plaintiff slowed down just before turning to the right, and there is no evidence that he did, the failure to give the signal could hardly have been an influence upon the operation of defendant's car; and, if not, the jury could hardly find such omission to have proximately con-

tributed in any degree to the collision. The graveled approach from the gate up to the traveled portion of the highway was about 16 feet wide, spreading out fan-like apparently to about 40 feet wide at the highway. Such an approach was an invitation for a gradual turn to the right rather than for an abrupt one. However, defendant made no request for any charge to the jury based upon this particular statute, though the court submitted to the jury defendant's claim that plaintiff turned to the right without giving any signal.

Affirmed.